[No. B041107. Second Dist., Div. Seven. Apr. 17, 1990.]

SALOWITZ ORGANIZATION, INC., Plaintiff and Respondent, v. TRADITIONAL INDUSTRIES, INC., Defendant and Appellant.

**COUNSEL**

Goldenring & Goldenring, Peter A. Goldenring and Steven A. Debbas for Defendant and Appellant.

Rosoff, Schiffres & Barta, Michael N. Friedman and Howard L. Rosoff for Plaintiff and Respondent.

## OPINION

**JOHNSON, J.**—In this case we consider whether a trial court has the inherent power to deny a motion for a trial de novo as a sanction for abuse of judicially mandated arbitration. Since we find an award of attorney's fees and costs under Code of Civil Procedure section 128.5[1] the only appropriate sanction, we further find additional monetary sanctions imposed for bringing a motion for reconsideration of the order denying the trial de novo an abuse of discretion.

### FACTS AND PROCEEDINGS BELOW

In December 1985 respondent, the Salowitz Organization, Inc. (Salowitz), filed a lawsuit against appellant Traditional Industries, Inc. (Traditional), for breach of contract. Trial was set for April 6, 1987. Salowitz filed a motion to compel production of documents on January 14, 1987. On February 10, 1987, three days before the hearing on the motion to compel, Goldenring & Goldenring notified Salowitz it was going to substitute in as counsel for Traditional and requested Salowitz to continue the hearing on the motion to compel. Three days before the continued motion to compel, one month before trial and seven months after the initial discovery request, Traditional finally responded. Salowitz, requiring more time to prepare for trial, then struck its at-issue memorandum.

The Goldenring law firm did substitute in as counsel for Traditional and erroneously for a codefendant as well. The trial court found that Traditional's counsel's failure to notify the court of the error was deliberate and willful.

The trial court found Traditional willfully failed to appear at mandatory settlement conferences set for December 22, 1987, and again on March 9, 1988. The minute orders appear to indicate Traditional's counsel was present, but even he admits he arrived so late to the December 22, 1987, meeting no conference was held.

The parties were then ordered to arbitration.[2] On June 6, 1988, the day before the scheduled arbitration hearing, Mr. Goldenring notified Salowitz's

---

[1] All citations are to the California Code of Civil Procedure unless otherwise indicated.

[2] Section 1141.11 on judicial arbitration states in pertinent part: "(a) In each superior court with 10 or more judges, all at-issue civil actions . . . shall be submitted to arbitration . . . if the amount in controversy in the opinion of the court will not exceed fifty thousand dollars . . . ."

counsel he had a conflict of interest with the selected arbitrator which resulted in recusal of the arbitrator and delay of arbitration proceedings. The trial court found Goldenring's tardy realization of the conflict willful and done for the express purpose of delay. Goldenring denies this and claims he did not discover the conflict until he started working on the file, the day before the scheduled arbitration.

On June 23, 1988, 14½ months after the discovery cutoff date, Traditional's counsel served discovery requests and threatened a motion to compel. The matter was dropped after an exchange of correspondence between counsel. The trial court found Traditional's discovery requests intended solely to harass the respondent. Traditional and its counsel allege they were not so intended and because resolved through the mandatory "meet and confer" mechanism, no penalty should attach.

The second and third arbitration hearings were scheduled for July 23, 1988, and October 24, 1988, respectively. The trial court found Traditional and its counsel willfully failed to appear at both hearings. At the third scheduled arbitration, the arbitrator awarded Salowitz $37,360.75 by default, after being informed Traditional's counsel would not arrive in time and that the arbitration should proceed without him.

Traditional's counsel claims the reasons for his absences were calendar conflicts, that he was in court on other matters which were delayed, and which in turn caused him to miss the arbitration proceedings. He claims his acts were in no way willful or deliberate or done with the purpose of delay or to harass Salowitz, but were merely problems typical of a one-lawyer firm.

Traditional timely filed a motion for trial de novo[3] which Salowitz opposed on the ground the request was just another delaying tactic and requested the trial court to strike the motion for a trial de novo or, in the alternative, to impose monetary sanctions under section 128.5. Traditional filed an opposition to Salowitz's motion to strike one day late but the trial court apparently considered it nonetheless.

The trial court concluded: Traditional and its counsel demonstrated a continuing course of willful, premeditated misconduct for the express purpose of delaying resolution of the lawsuit; Traditional and its counsel will-

---

[3] Section 1141.20 states in pertinent part: "(b) Any party may elect to have a de novo trial, by court or jury, both as to law and facts. . . ."

fully violated the court's order to arbitrate; and, Traditional and its counsel acted frivolously, in bad faith and with intent to harass Salowitz and create unnecessary delay. Consequently, the trial court, partially in reliance on Salowitz's representation of the scope of a trial court's inherent power, struck Traditional's request for a trial de novo and imposed sanctions of $6,000 under section 128.5.

Traditional filed a motion for reconsideration which was denied and for which additional monetary sanctions in the amount of $1,685 were imposed. This appeal followed.

## DISCUSSION

### I. INVOLUNTARY DISMISSAL IS TOO DRASTIC A SANCTION FOR REFUSAL TO PARTICIPATE IN ARBITRATION.

Involuntary dismissals may be expressly authorized by statute. For example, section 2034 authorizes involuntary dismissal as a sanction for refusal to comply with discovery orders. Section 581, subdivision (b)(5) authorizes dismissal when either party fails to appear and the other party asks for a dismissal. Section 583.410 authorizes dismissal as a sanction for a plaintiff's failure to prosecute. These circumstances however are not present in this case which instead concerns conduct relating to judicially mandated arbitration proceedings.

■ Neither the judicial arbitration statutes (§§ 1141.10, 1141.32) nor the rules of judicial arbitration (Cal. Rules of Court, rules 1600-1617) permit a court to dismiss an action because of a party's failure to participate in an arbitration proceeding. Thus the trial court's dismissal of Traditional's motion for trial de novo was not expressly authorized by statute.[4]

■ Even without express statutory authority, a trial court may invoke its limited, inherent discretionary power to dismiss claims. (See 6 Witkin, Cal. Procedure (3d ed. 1985) Proceedings Without Trial, § 212, pp. 517-518.) These grounds include lack of jurisdiction, inconvenient forum, non-justiciable controversy (e.g., the complaint is fictitious or a sham such that the plaintiff has no valid cause of action), or plaintiff's failure to give security for costs. None of these circumstances exist in the present contro-

---

[4] However, as will be discussed later, section 128.5 authorizes a trial court to order a party to pay any reasonable expenses, including attorney's fees which the opposing party incurs as a result of bad faith actions or frivolous or delaying tactics in judicial arbitration proceedings.

versy. Nor did the trial court rely on any of these grounds in denying Traditional's motion for a trial de novo. Instead the trial court relied on its inherent power to dismiss in a case of "particularly egregious conduct."

The California Supreme Court has recently addressed this precise issue in *Lyons* v. *Wickhorst* (1986) 42 Cal.3d 911 [231 Cal.Rptr. 738, 727 P.2d 1019]. There the court recognized the inherent power of the trial court to dismiss actions but held its exercise improper as a sanction for refusal to participate in mandatory arbitration proceedings. (43 Cal.3d at p. 919.) In *Lyons*, the trial court ordered mandatory arbitration as the damages appellant claimed were within the statutory limit. After the first arbitration was set, the appellant informed the arbitrator and counsel for the respondent he did not intend to present any evidence in support of his case. The respondent made no attempt to refute appellant's claims so no evidence was introduced at the first hearing. The superior court appointed a new arbitrator and scheduled another hearing at which appellant again declined to present any evidence. An award was entered in favor of respondent, and appellant immediately requested a trial de novo. In granting respondent's motion for dismissal, the trial court stated "appellant's refusal to offer any evidence at the court-ordered arbitration hearings, 'border[ed] on contempt,' and was a 'continuing and willful rejection of the whole arbitration program.'" (*Id*. at p. 914.) In reviewing appellant's challenge to the trial court's authority to dismiss his action for failure to participate in the mandatory arbitration hearings, the Supreme Court reviewed the only two existing Court of Appeal decisions concerning dismissal for arbitration abuses and the legislative response to those decisions.

In the first decision, *Hebert* v. *Harn* (1982) 133 Cal.App.3d 465 [184 Cal.Rptr. 83], the defendant failed to participate in the judicial arbitration process. Defendant's timely request for a trial de novo was denied because the defendant had failed to comply with a local rule requiring a demonstration of good cause for nonparticipation as a prerequisite for obtaining a trial de novo. On appeal the local rule was invalidated. The *Hebert* court held, unlike the legislation establishing prerequisites to appealing a small claims court judgment (§ 117.8, subds. (c) & (d)), the arbitration provisions did not authorize dismissal even where the moving party failed to participate. (*Hebert* v. *Harn*, *supra*, 133 Cal.App.3d at pp. 469-470.) The omission of similar requirements in the arbitration statute was held to demonstrate a legislative intent that access to the court for a new trial be "procedurally

unfettered." (*Id.* at p. 470.)[5] The *Hebert* court invited legislative review of its decision.

The next year, the court in *Genovia* v. *Cassidy* (1983) 145 Cal.App.3d 452 [193 Cal.Rptr. 454] declined to follow *Hebert* and upheld a dismissal for "premeditated, intentional and purposeful course of action taken by Genovia and his counsel to seek an avenue of escape from a clearly mandated arbitration procedure." (*Id.* at p. 458.)

In 1984, the Legislature responded by amending section 128.5 to "make clear that the sanctions authorized by that statute for frivolous or delaying tactics were applicable to judicial arbitration proceedings." (*Lyons* v. *Wickhorst, supra*, 42 Cal.3d at p. 918.) The Supreme Court found because the Legislature chose not to provide for dismissal as a sanction for a party's refusal to participate in arbitration the lawmakers intended the sole sanction for this misconduct should be the imposition of attorney's fees and costs under section 128.5. The court stated: "According to the [staff report to the Assembly Committee on the Judiciary], the sponsors of the bill contended that the legislation would ' "ameliorate the unfairness" ' that results when a party requests a trial de novo after failing to appear and participate in a judicial arbitration hearing.' . . . (See Staff Rep. on Assem. Bill No. 2752 (1983-1984 Reg. Sess.) to Sen. Com. on Judiciary, p. 3.)

"Thus, the 1984 amendment to section 128.5 addressed the precise problem that is presented here. The Legislature chose not to provide for dismissal as a sanction if a party refuses to participate. Rather, it authorized a court to impose additional costs and attorney fees on the errant party or his attorney.

"The Legislature squarely considered the problem of nonparticipation in judicial arbitration proceedings and decided to put teeth into the 'mandatory' nature of the process by authorizing the assessment of expenses, including attorney's fees, against a nonparticipating party.

"An immediate and unconditional dismissal entered at the first suggestion of noncooperation is too drastic a remedy in light of the fact that arbitration was not intended to supplant traditional trial proceedings, but to expedite the resolution of small civil claims." (43 Cal.3d at p. 919.)[6]

---

[5] The only procedural requirement for a trial de novo is that the request be made within 30 days following the arbitration award. (§ 1141.20 and Cal. Rules of Court, rule 1616.)

[6] Three justices left open the question of whether, in a particularly egregious case, a trial court would have inherent power to dismiss the action. (*Lyons* v. *Wickhorst, supra*, 42 Cal.3d

Thus, after reviewing the legislative history of the amendments to section 128.5 which authorized only monetary sanctions for arbitration abuses, and approving the *Hebert* court's approach of granting a trial de novo upon proper request and without regard to the requesting party's misconduct, the Supreme Court reversed the trial court's order dismissing the appellant's action.

 Given the similarity of circumstances in this case and in *Lyons* and *Hebert* (a trial de novo requested by the party who failed to participate in mandatory arbitration proceedings), a similar resolution of this case is inescapable, i.e., the trial court's denial of Traditional's request for a trial de novo was an inappropriate sanction for failure to participate in judicially mandated arbitration proceedings. We recognize, however, the importance of encouraging litigants to participate in mandatory arbitration. This simple, economical alternative for the prompt resolution of disputes benefits the litigants as well as the judicial system. Indeed, in enacting the judicial arbitration statutes the Legislature found litigation involving small civil claims too costly and complex and expressly declared "that arbitration has proven to be an efficient and equitable method for resolving small [civil] claims, and that courts should encourage or require the use of arbitration for such actions whenever possible." (§ 1141.10, subd. (a).) Full participation in the arbitration process may be somewhat diminished by those who would abuse the process by noncompliance and who can be assured of a trial de novo without risk of the ultimate sanction of involuntary dismissal. However, the Legislature was presumably fully apprised of the *Genovia* v. *Cassidy, supra,* 145 Cal.App.3d 452 decision ordering dismissal when it enacted the amendments to section 128.5 providing only for attorney's fees and costs as sanctions for abuse of the arbitration process. (See, *Lyons, supra,* 42 Cal.3d at p. 919, fn.9.) The fact that the Legislature has still not provided for the remedy of dismissal after the *Lyons* decision is further indication of legislative intent not to authorize it. As stated in *Hebert* v. *Harn, supra,* 133 Cal.App.3d at page 470, "Because of this knowledge and

---

911, 926 (conc. opn. of Reynoso, J., joined by Lucas, J. and Panelli, J.).) Justice Grodin, who joined the Chief Justice's majority opinion, concurred separately to express his view the Legislature may constitutionally authorize a trial court to dismiss an action for intentional failure to participate in judicially mandated arbitration. However, because the Legislature was expressly invited to take up the issue of appropriate sanctions and did so without providing for dismissal as a sanction for abuse of arbitration, but instead provided for monetary sanctions under section 128.5, Justice Grodin concluded "the absence of a statutory provision authorizing dismissal takes on added significance. . . ." (*Lyons* v. *Wickhorst, supra,* 42 Cal.3d 911, 927 (conc. opn. of Grodin, J.).)

The trial court apparently relied on the minority view in *Lyons* as urged by respondent's counsel.

the ease with which the Legislature could have imposed [sanctions] on a defendant who failed to participate in a judicially ordered arbitration hearing, we conclude this omission reflects the intent of the Legislature that access to the court for a new trial following a judicially ordered arbitration was to be procedurally unfettered." Hence, it would be inappropriate for this court to uphold a dismissal and authorize what the Legislature declined to adopt as the proper sanction for arbitration abuse. On the other hand, the imposition of sanctions under section 128.5 was properly within the court's discretion.

## II. THE IMPOSITION OF SANCTIONS UNDER SECTION 128.5 FOR PREARBITRATION AND ARBITRATION MISCONDUCT WAS NOT AN ABUSE OF DISCRETION.

■ The award or refusal of sanctions under section 128.5 is within the discretion of the trial court and its order may be reversed on appeal only if abuse of discretion is shown. Discretion is abused in the legal sense " 'whenever it may be fairly said that in its exercise the court . . . exceeded the bounds of reason or contravened the uncontradicted evidence.' " [Citations omitted.] (*Continental Baking Co.* v. *Katz* (1968) 68 Cal.2d 512, 527 [67 Cal.Rptr. 761, 439 P.2d 889].) "Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered. The burden is on the party complaining to establish an abuse of discretion, and unless a clear case of abuse is shown and unless there has been a miscarriage of justice a reviewing court will not substitute its opinion and thereby divest the trial court of its discretionary power." (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 566 [86 Cal.Rptr. 65, 468 P.2d 193].)

■ Traditional challenges the trial court's findings as not based on the evidence. However, we find there is substantial evidence in the record to support the trial court's conclusion that the initial award of sanctions in the amount of $6,000 was warranted. ■ In addition, in examining the sufficiency of the evidence to support a questioned finding: "an appellate court must accept as true all evidence tending to establish the correctness of the finding as made, taking into account, as well, all inferences which might reasonably have been thought by the trial court to lead to the same conclusion. Every substantial conflict in the testimony is, under the rule which has always prevailed in this court, to be resolved in favor of the finding." (*Bancroft-Whitney Co.* v. *McHugh* (1913) 166 Cal. 140, 142 [134 P. 1157].)

■ Traditional does not contest the court's finding that a motion to compel was necessary to force Traditional's cooperation in discovery. Nor

does Traditional deny ignoring the consequences of filing an erroneous substitution of counsel. Traditional also admits late filing of opposition papers to Salowitz's request to deny the trial de novo. Most significantly, Traditional admits neither it nor its counsel nor its witnesses appeared for two scheduled arbitration proceedings. Traditional's counsel adamantly denies failing to appear at two mandatory settlement conferences and submits copies of the minutes of the superior court indicating his presence at apparently one of them.[7] But even Traditional's counsel admits arriving at the conference over an hour late which precluded the holding of any conference.[8]

It is our view that an award of sanctions in this case is justified, is amply supported in the record and is within the trial court's discretion.[9]

### III. THE TRIAL COURT ABUSED ITS DISCRETION BY DENYING TRADITIONAL'S MOTION FOR RECONSIDERATION AND IN IMPOSING ADDITIONAL SANCTIONS.

Section 1008, subdivision (a) provides: "any party affected by the order may, within ten (10) days after knowledge of the order and based upon an alleged different state of facts may, make application to the same judge who made the order, to reconsider the matter and modify, amend or revoke the prior order."

■ Trial courts, however, have inherent jurisdiction to reconsider their interim rulings until those rulings become final by entry of judgment, even

---

[7] Only one of the minute orders concerning this case was included in the clerk's transcript. Judicial notice was then requested and granted to take notice of various minute orders of the superior court.

[8] In imposing the sanctions, the trial court stated: "This is a situation that time and time and time again the defendants have failed to serve their clients and let the plaintiffs have their right to a trial or to an arbitration by not showing up for arbitration, for frustrating the process throughout the file.

"My finding on January 27 was that the court finds that the defendant and counsel willfully failed to cooperate in arbitrating this matter, that there has been on the part of the defendants and counsel a continuing course of delay and obstruction. . . ."

[9] Traditional challenges the amount of the award as not based on fact. Salowitz requested sanctions of $11,000 and the trial court awarded $6,000. However, where a statute merely gives a general right to attorney's fees or to "reasonable" fees, the amount awarded is within the discretion of the court. (*In Re Marriage of Quinlan* (1989) 209 Cal.App.3d 1417, 1421 [257 Cal.Rptr. 850] [court not bound by a strict accounting requirement in determining the amount of sanction]; *Dwyer* v. *Crocker National Bank* (1987) 194 Cal.App.3d 1418, 1438 [240 Cal.Rptr. 297] [court not bound in its determination by such traditional factors as hours consumed, statements mailed, etc.].

Since Traditional has not furnished this court with a transcript of the hearing on the award it is impossible to determine precisely what factors the trial court considered in arriving at the $6,000 amount. We are thus unable to review any assignments of error on appeal and accept as reasonable the figure adopted by the trial court.

in the absence of newly discovered evidence. (*Greenberg* v. *Superior Court* (1982) 131 Cal.App.3d 441 [182 Cal.Rptr. 466]; *Blue Mountain Development Co.* v. *Carville* (1982) 132 Cal.App.3d 1005 [183 Cal.Rptr. 594].)

On January 27, 1989, Traditional's request for a trial de novo was denied and sanctions were imposed. On February 24, 1989, Traditional's motion for reconsideration was denied and additional sanctions imposed against it and its counsel. On March 2, 1989, the trial court's findings of fact and conclusions of law supporting striking Traditional's request for a trial de novo were filed. ■ "The usual test for distinguishing between interim and final rulings is appealability." (*Blue Mountain Development Co.* v. *Carville, supra*, 132 Cal.App.3d at p. 1013; See also 7 Witkin, Cal. Procedure (3d. ed. 1985) Judgment, § 211, pp. 648-650.) Where findings of fact or some other type of formal evidence of the judgment or order is required, an appeal does not lie from a minute order. (See *Herrscher* v. *Herrscher* (1953) 41 Cal.2d 300, 304 [259 P.2d 901].) The January 27, 1989, minute order denying Traditional's request for a trial de novo instructed Salowitz to prepare the findings and judgment. The trial court's findings of fact and conclusion of law were filed March 2, 1989. Subsequent to this order, there were at least two more motions filed and at least one more hearing held on this matter before the final judgment was entered. In fact, the hearing on June 6, 1989, concerned the final form of the "proposed" judgment. "The trial court had power to reconsider the rulings so long as no final judgment had been entered and the case was still pending before the court." (*Magallanes* v. *Superior Court* (1985) 167 Cal.App.3d 878, 882 [213 Cal.Rptr. 547].)

■ Thus it would appear the order of January 27, 1989, was not a final judgment and consequently must be considered an interim order. That being so, it was within the trial court's discretion to grant the motion for reconsideration even without a presentation of newly discovered facts. In view of our holding that *Lyons* compels the conclusion Traditional is entitled to a trial de novo, the trial court should have exercised its discretion in favor of reviewing its erroneous order denying Traditional's request.

■■■ 10.), ■ Because Traditional's motion for reconsideration clearly was not frivolous or meritless, we further find the sanctions in the amount of $1,685 awarded under section 128.5 for bringing the motion for reconsideration cannot stand.[10]

---

[10] We decline Salowitz's request sanctions be imposed against Traditional for a frivolous appeal. In the case of *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [183 Cal.Rptr. 508, 646 P.2d 179], our Supreme Court instructed "[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the

## DISPOSITION

That portion of the trial court's order striking the motion for trial de novo and imposing sanctions of $1,685 for filing the motion to reconsider is reversed. That portion awarding sanctions of $6,000 for prearbitration and arbitration misconduct is affirmed. Each party to bear its own costs on appeal.

Lillie, P. J., concurred.

**WOODS (Fred), J.**—I concur in the majority opinion but write separately to express my view that this case is an example of the "egregious" conduct mentioned by Supreme Court Justice Reynoso in his concurring opinion in *Lyons* v. *Wickhorst* (1986) 42 Cal.3d 911, 927 [231 Cal.Rptr. 738, 727 P.2d 1019]. In discussing the power of the court to dismiss an action although not specifically provided in Code of Civil Procedure section 128.5, he states: "However, I do not believe that the staff report relied on by Justice Grodin (*post*) and the majority opinion as legislative history [citation] is a sufficient basis for precluding court exercise of inherent powers. *I would leave open the question whether, in a particularly egregious case, a trial court would have inherent power to dismiss the action.*" (Italics added.) Justices Lucas and Panelli concurred in Justice Reynoso's opinion.

Unfortunately, Justice Reynoso's view is dicta expressed in a minority opinion. I suggest, however, that this case might be a suitable one for the California Supreme Court to reassess its views expressed in *Lyons*. Conjointly the Legislature may wish to amend Code of Civil Procedure section 128.5 to provide for dismissal as an alternative under Code of Civil Procedure section 128.5. It appears to this concurring justice that such an amendment would be in the spirit of the Trial Court Delay Reduction Act[1] where the Legislature has already provided in Government Code section 68609, subdivision (d) as follows: "(d) In order to enforce the requirements of an exemplary delay reduction program and orders issued in cases assigned to it, the judges of the program shall have all the powers to impose sanctions authorized by law, including the *power to dismiss actions* or strike pleadings, if it appears that less severe sanctions would not be effective after taking

---

effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit." (*Id.* at p. 650.) Because we find Traditional's appeal meritorious, an award of sanctions would be inappropriate.

[1] We are unable to discern from the record whether this case has been assigned to "fast track" as implementation of the Trial Court Delay Reduction Act.

into account the effect of previous sanctions or previous lack of compliance in the case. Judges are encouraged to impose sanctions to achieve the purposes of this article." (Italics added.)

Respondent's petition for review by the Supreme Court was denied June 27, 1990. Kennard, J., and Arabian, J., were of the opinion that the petition should be granted.